# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 19-0021V
UNPUBLISHED

| | |
|---|---|
| DENNIS SCHMITT,<br><br>                     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                     Respondent. | Chief Special Master Corcoran<br><br>Filed: August 30, 2021<br><br>Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Influenza (Flu); Shoulder Injury Related to Vaccine Administration (SIRVA). |

*Leah V. Durant*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.

*Claudia B. Gangi*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On January 3, 2019, Dennis Schmitt filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that he suffered a shoulder injury related to vaccine administration ("SIRVA") caused by the influenza ("flu") vaccine he received on November 22, 2017. Petition at 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters. For the reasons set forth below, I find that Petitioner is entitled to a damages award of **$120,174.94 (representing $118,000.00 for actual pain and suffering, and $2,174.94 for actual out-of-pocket expenses).**

---

[1] Because this unpublished opinion contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the opinion will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I. Relevant Procedural History

19 months after Petitioner initiated his claim, in September 2020, Respondent conceded that he was entitled to compensation. Rule 4(c) Report (ECF No. 32). I thereafter issued a ruling on entitlement and directed the parties to work collaboratively towards resolving damages. ECF Nos. 33-34.

In February 2021, the parties reached an impasse in their discussions. ECF No. 40. Accordingly, I set a schedule for any additional evidence and briefing. Scheduling Order (Non-PDF) entered March 2, 2021. Petitioner filed his second affidavit as Ex. 13 on April 1, 2021, followed by a brief arguing for $160,000.00 for actual pain and suffering on May 21, 2021, ECF No. 43. On July 8, 2021, Respondent countered that Petitioner's evidence and a comparison to other conceded cases supported a pain and suffering award of only $75,000.00. ECF No. 44. The parties agreed, however, that the record supported actual out-of-pocket expenses totaling $2,174.94.

In July 2019, I informed the parties that this matter appeared to be appropriate for an expedited hearing and ruling, and they accepted my proposal. Scheduling Order (Non-PDF) entered July 12, 2021; ECF No. 46. Therefore, at the August 2021 Motions Day, I heard oral argument[3] and issued a bench ruling on the appropriate award of pain and suffering, which is memorialized below.[4]

## II. Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

---

[3] Attorney Christopher Williams presented oral argument on behalf of Petitioner.

[4] *See* Joint Status Report (ECF No. 46); Hearing Order filed July 27, 2021 (Non-PDF); Minute Entry entered August 27, 2021 (Non-PDF). A court reporter made an official recording of the proceeding. A link to instructions on the court's website detailing how to order a certified transcript or audio recording of the proceeding can be found in the minute entry. *See also* www.uscfc.uscourts.gov/trans (last visited August 27, 2021).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.*, No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[5] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. In *Graves*, Judge Merow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. *Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013). Judge Merow maintained that do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, Judge Merow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

---

[5] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

### III. Appropriate Compensation for Petitioner's Pain and Suffering

In this case, Petitioner's awareness of the injury is not disputed, which leaves only the severity and duration of the injury to be considered. In assessing those factors, I have reviewed the record as a whole, including the medical records, affidavits, and all assertions made by the parties in written documents and at the expedited hearing held on August 27, 2021. I considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I ultimately base my determination on the specific circumstances of this case.

Pursuant to my oral ruling on August 27, 2021 (which is fully incorporated herein), **I find that $118,000.00 represents a fair and appropriate amount of compensation for Petitioner's past pain and suffering. Petitioner has not sought and I have not found preponderant evidence to support an award for future pain and suffering.**

Upon receiving the flu vaccine in his non-dominant left shoulder on November 22, 2017, Petitioner was 70 years old, had a non-contributory medical history, and was employed as a residential contractor. He sought medical treatment relatively promptly, just 22 days later on December 14, 2017, with his primary care provider. He reported a sore arm and pain with abduction ever since the vaccine. Ex. 7 at 1. He was observed to have full range of motion except with lateral abduction to the horizontal level, significant pain over the biceps bursa but no visible redness or swelling. *Id.* He was assessed with bursitis, for which he would apply a non-steroidal anti-inflammatory ("NSAID") topical gel, take extra-strength acetaminophen as needed, and follow up and seek a steroid injection in the event of "uncontrolled" pain. *Id.*

On December 20, 2017, Petitioner presented to an orthopedist for shoulder pain rated at 8/10, specifically upon lifting his arm away from his body, that also woke him up but did not keep him up at night, as well as decreased range of motion. Ex. 3 at 18. The orthopedist assessed subacromial bursitis and recorded that Petitioner "experienced marked improvement" upon receiving a steroid injection. *Id.* at 20.

On January 8, 2018, at his initial physical therapy evaluation, Petitioner again reported shoulder pain of 8/10 that was "intermittent." Ex. 4 at 14. The cortisone injection offered 24 hours of relief and he continued to take ibuprofen. *Id.* He was not using the left arm much and could not sleep on his left side. *Id.* After a second physical therapy session just four days later, Petitioner continued with home exercises. Ex. 3 at 29. Then on January 31, 2018, upon following up with the orthopedist, he reported pain of 7/10 but denied taking any pain medication. *Id.*

4

A February 1, 2018, MRI of the left shoulder revealed diffuse labral degeneration; moderate to severe acromioclavicular joint arthritis, mild glenohumeral joint arthritis; subacromial/subdeltoid bursitis; tears in the supraspinatus and biceps; and a "partial… nearly full-thickness tear" in the subscapularis tendon. Ex. 3 at 32.[6] On February 14, 2018, the orthopedist recorded that Petitioner's pain remained at 7/10 and reviewed the MRI findings, but was "hesitant for surgery, as [Petitioner] adamantly expressed disbelief that the flu shot did not cause his rotator cuff tear and symptoms." Ex. 3 at 34-36.

On March 5, 2018, Petitioner consulted a second orthopedist, Dr. Robert R Scheinberg, for persistent pain at 7/10 both at rest and with activity, "despite conservative management" and "some exercises." Ex. 6 at 16. His assessments were acute bursitis, articular cartilage disorder, biceps tendinitis, non-traumatic incomplete tear of the rotator cuff, and pain. *Id.*

On April 24, 2018, Dr. Scheinberg performed arthroscopic debridement of the labral tear, synovitis, and abrasion to the humeral head and glenoid; subacromial decompression and bursectomy; and rotator cuff repair. Ex. 6 at 31. He prescribed a five-day course of acetaminophen-hydrocodone for post-operative pain. *Id.* at 22.

On May 11, 2018, at the post-operative physical therapy evaluation, Petitioner reported that his pain was "deep" and "throbbing," but only 2-3/10. Ex. 4 at 28. However, his shoulder rehabilitation potential was good. *Id.* at 29. The therapist planned one to two sessions per week for eight weeks, to improve Petitioner's left shoulder range of motion and pain as well as *right* shoulder crepitus and poor postural alignment. *Id.* Petitioner attended further sessions on May 14, May 21, May 25, and May 28, 2018. Ex. 12 at 8. At the sixth post-operative session on June 13, 2018, Petitioner reported that swimming during a recent vacation had been "very helpful" for his shoulder. *Id.* at 4. After that last session, Petitioner had full active range of motion in the left shoulder and he had achieved all goals except that his ability to lift a 40-pound weight from the floor was not assessed. *Id.* at 3. Petitioner reported that he was "nearly 100%", he was "tolerating all ADLs fully." *Id.* He self-discharged with a home exercise program that emphasized scapular stability, stretching, and deltoid strengthening. *Id.*

On August 20, 2018, Dr. Scheinberg recorded that since the surgery, Petitioner had "a little bit of achiness and stiffness at times, but overall is doing well and pleased with his progress." Ex. 6 at 40. He was continuing home exercises. *Id.* Physical

---

[6] On February 6, 2018, Petitioner telephoned his primary care provider to request prescription medication to treat the "sharp pain" in his shoulder. Ex. 10 at 77. The primary care provider recommended trying acetaminophen extra strength (which Petitioner had already been taking") although he "can have some Tramadol 50mg 1 q4h prn uncontrolled pain." *Id.* However, the record does not corroborate that Petitioner ever received or filled such a prescription.

5

examination of the left shoulder revealed full range of motion and normal strength. *Id.* Dr. Scheinberg instructed Petitioner to "call or return if symptoms worsen or persist." *Id.* The records from Petitioner's next medical encounter – his annual physical on August 20, 2018 – do not specifically address the left shoulder and list numerous medications but not for pain. Ex. 10 at 48-49.

On May 15, 2019, Petitioner returned to Dr. Scheinberg, reporting current pain of 4/10 at rest and 6/10 with activity, characterized as "a little bit of discomfort and achiness" at the biceps and subscapularis tendon. Ex. 9 at 1. Dr. Scheinberg reviewed that as of surgery, Petitioner had "a little bit of fraying" at the subscapularis tendon. *Id.* The current impression was "a little bit of tendinitis and partial-thickness tearing of his subscap." *Id.* 3. However, he maintained the five assessments and diagnostic codes that were present in his 2018 records. *Id.* at 2. Dr. Scheinberg administered a steroid injection and recorded that Petitioner would follow up in six to eight weeks, but no further records have been filed. *Id.* at 3.

In his affidavits, Petitioner avers that while physical therapy was helpful, he has lingering pain in his left shoulder. Ex. 8 at ¶ 4. This pain is intermittent and associated with inadvertently sleeping on his left side, bearing too much weight on the shoulder, and exercise (riding a stationary bike and light weights). Ex. 13 at ¶¶ 1, 3. He has "learned to live with" the pain. *Id.* at ¶ 1. Petitioner avers that this shoulder pain is "different than normal aches and pains I would expect from aging." *Id.* Petitioner also avers that he experienced significant shoulder pain while lifting heavy objects at work sites and that he has declined many jobs since his injury. Ex. 8 at ¶ 5.[7]

As I informed the parties during the expedited hearing, the question in this case is not whether Petitioner is entitled to *any* compensation for his pain and suffering, but rather what amount of compensation is justified. This determination is not an exact science, but more of an art. While I will consider the amounts proposed by the parties, each petitioner deserves an examination of the specific facts in his or her case. Thus, while my award may fall somewhere in the range between the parties' proposed amounts, the result flows from a specific analysis of Mr. Schmitt's personal circumstances.

Upon review, Mr. Schmitt sought relatively prompt and concerted medical attention, and his initial pain was consistently documented as 7-8 /10. However, he managed that pain with over-the-counter medications. However, after surgery and just four additional physical therapy sessions, he had significantly less pain and no documented limitations. Mr. Schmitt's assertion of ongoing pain and suffering beyond

---

[7] Petitioner's demand did not include any request for lost earnings.

May 2018 is weakened by the gap in treatment. While I have recognized in prior decisions that SIRVA can recur to some degree, here Respondent argued that Mr. Schmitt's shoulder pain upon returning to his orthopedic surgeon in May *2019* was more likely due to a new, unrelated progression of his subscapularis tear. Respondent's argument is somewhat persuasive, but I find it unnecessary to make a formal determination on that point and I shall instead balance out the weight I give to this occurrence in calculating pain and suffering.

The increasing number of past reasoned opinions on SIRVA pain and suffering should hopefully guide subsequent cases, either via informal settlement or in formal briefing – and to that end both sides made some effort to invoke useful prior determinations. Petitioner contended that his case is "on point" with *Reed v. Sec'y of Health & Human Servs.*, No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019) (awarding $160,000.00 for past pain and suffering). *See* Pet. Brief at 11. But there was persuasive evidence that even after surgery, Ms. Reed did not significantly recover, she relied on prescription opioids and pain management after surgery, and her ongoing shoulder injury impacted both her ability to work and to fulfill important family obligations.[8] Accordingly, *Reed*'s award is too high under the circumstances.

Respondent conceded that the degree of necessary treatment of Mr. Schmitt's SIRVA – specifically, arthroscopic surgery – "counsels in favor of a higher award." Response at 8.[9] Respondent then asserted that Mr. Schmitt's severity and duration of pain associated with his SIRVA were "moderate," therefore warranting a "much lower award than in… the vast majority of cases involving surgical treatment," specifically in Respondent's view, $75,000.00. Response at 8. Respondent may be referring to SIRVA surgery cases that were resolved by stipulation or proffer. However, my review did not

---

[8] I have explained that these unique factors justified a higher pain and suffering award in several prior cases, all of which were issued prior to the briefing in this case and in which two out of three petitioners were represented by Ms. Durant's firm. *See* Response at 6 (citing, e.g., *Wilson v. Sec'y of Health & Human Servs.*, No. 19-35V, 2021 WL 1530731, at *5 (Fed. Cl. Spec. Mstr. Mar. 18, 2021); *Roberson v. Sec'y of Health & Human Servs.*, No. 19-90V, 2020 WL 5512542, at *4 (Fed. Cl. Spec. Mstr. Aug. 7, 2020); *Rafferty v. Sec'y of Health & Human Servs.*, No. 17-1906V, 2020 WL 3495956, at *17 (Fed. Cl. Spec. Mstr. May 21, 2020). I hereby emphasize that *Reed's* applicability is limited and there are numerous other opinions which may offer more relevant guidance as to the appropriate quantum of damages.

[9] At the expedited hearing, Ms. Gangi suggested that some individuals choose to undergo surgery and other individuals with the same degree of pain may choose to manage it differently. In general, I have found that most cases involving surgery – which is invasive and carries some risks including infection and adverse responses to anesthesia – are more severe than cases not involving surgery. That does not preclude a petitioner from establishing why he or she did not undergo surgery, but still sustained a severe injury.

locate *any* SIRVA surgery case involving a reasoned determination of damages which culminated in an award of less than $100,000.00 for past pain and suffering.[10]

Overall, I find that Mr. Schmitt is similar to past petitioners who suffered moderate to severe initial pain and limited range of motion, sought medical attention and surgery relatively promptly, had a good recovery, but for whom there was a significant gap in treatment. *See, e.g., Randazzo v. Sec'y of Health & Human Servs.*, No. 18-1513V, 2021 WL 829572 (Fed. Cl. Spec. Mstr. Feb. 1, 2021) (awarding $125,000.00 for past pain and suffering); *Hayes v. Sec'y of Health & Human Servs.*, No. 17-804V, 2021 WL 688628 (Fed. Cl. Spec. Mstr. Jan. 6, 2021) ($120,000.00); *Stoliker v. Sec'y of Health & Human Servs.*, No. 17-990V, 2020 WL 5512534 (Fed. Cl. Spec. Mstr. Aug. 7, 2020) ($120,000.00). In fact, Mr. Schmitt's case involves a slightly shorter course and less explanation for the gap in medical treatment. I therefore approve a somewhat lower award than in these comparable cases.

## IV. Conclusion

Based on the record as a whole and the parties' arguments, I award Petitioner a lump sum payment of **$120,174.94 (representing $118,000.00 for actual pain and suffering and $2,174.94 for actual out-of-pocket expenses).** This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this decision.[11]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[10] At the expedited hearing, I stressed that it is more helpful for Respondent to offer comparisons to specific past reasoned opinions within the Vaccine Program. Respondent referenced a recent case in which the petitioner had an excellent recovery following surgery – likely *Martin v. Sec'y of Health & Human Servs.*, No. 19-830V, 2021 WL 2350004 (Fed. Cl. Spec. Mstr. May 5, 2021) (awarding $100,000.00 for past pain and suffering). While Respondent's characterization of Mr. Martin's post-surgical outcome is correct, that individual's 18-week delay in seeking medical attention and the consistent characterizations of his pain as mild, even before surgery, supported an even lower amount than is awarded here.

[11] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.